UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONALD BICKHAM                                    CIVIL ACTION

VERSUS                                            NO. 14-16

BURL CAIN, WARDEN                                 SECTION "N"(2)

## REPORT AND RECOMMENDATION

Ronald Bickham has applied to this court for a writ of habeas corpus under 28 U.S.C. § 2254. His petition was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the petition and its attachments, I have determined that it is plain on the face of these submissions that Bickham is not entitled to federal habeas corpus relief. Neither a response, review of the state court record, further briefing,[1] nor a federal evidentiary hearing are necessary.[2]  For the following reasons, I recommend that the

_____

[1] "The clerk must promptly forward the [habeas] petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss then petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response. . . ." Rule 4, Rules Governing Section 2254 Cases in the United States District Courts, Federal Civil Judicial Procedure and Rules at p. 360 (West Pamph. 2013 rev. ed.).

[2] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that

instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.      STATE COURT BACKGROUND

For purposes of this report and recommendation only, I will assume that Bickham's representations concerning the factual and procedural background of his case in the state court proceedings are accurate. Bickham is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3]  On May 20, 2008, he was charged by bill of information in St. Tammany Parish with two counts of first degree murder.[4] Bickham pled not guilty and was tried before a twelve-person jury on January 11-13, 2009.[5]

The Louisiana First Circuit Court of Appeal summarized the facts of the case as proven at trial as follows:

> On or about December 22, 1995, the St. Tammany Parish Sheriff's Office was dispatched to a mobile home in Covington, Louisiana, the scene of a double homicide. The victims, Lloyd Bedford and Barbara Murray, suffered multiple stab wounds. Bedford's wounds included stab wounds to the back of his head and one

---

was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B). No such circumstances exist in this case.

[3]Rec. Doc. No. 1 (Form Petition at p. 1).

[4]Id. at p. 12 (Brief in Support of Petition at p. 2).

[5]Id.

that severed an artery. Murray's stab wounds included the transaction of the right subclavian artery and vein, just below the collarbone, a stab wound on the left side of her face, and a slash on the middle finger of her right hand, consistent with a defensive wound. Bedford's body was lying in the hallway near the kitchen, and his pockets were turned inside out. Murray's body was on the kitchen floor wearing a gown that was pulled up and bloodstained underwear. The blood droplet on the victim's underwear appeared to be caused by someone standing over her. There were no signs of forced entry.

On the morning of the incident, at approximately 7:30 a.m., defendant, the victims' neighbor and frequent visitor, came to the nearby home of Janice Johnson Vick (she lived "around the corner" from the victims and defendant). Defendant's hand was bleeding, and he asked if he could come in and wash his hands. Vick allowed defendant to come in and wash his hands, gave him a towel to wrap around his injured hand, and offered to take him to the hospital. Defendant opened the towel and showed his wound to Barry Powell, a construction worker who was working with the defendant at the time. Defendant told members of his family, Vick, and Powell that he cut his hand on vinyl siding. Powell described the defendant's injury as a "wide open" "stab" wound that did not appear to be caused by a "flimsy" material like vinyl siding. Powell took defendant to the emergency room for treatment. Defendant's sister confirmed that defendant had a long, deep cut that went across the palm of his hand to the area between his thumb and index finger. Defendant went back home that morning after getting stitches.

Defendant was in the area when the police arrived, and Detective Terry Parta noticed that he had a cut on his hand. Defendant told the detective that he cut his hand on vinyl siding. The police recovered and seized pieces of vinyl siding with what appeared to be blood on them and a knife with no handle that appeared to be bloodstained from a burn pile located on Joe Freeman's property where the defendant and others had been constructing a home, across the street from the victims' residence. The results of expert DNA testing of samples from the vinyl siding and Murray's underwear compared to a sample of defendant included thirteen matching genetic locations, with the frequency of this profile being found in one in greater than ten billion individuals.

State of Louisiana v. Bickham, 57 So. 3d 612 (table), 2011 WL 2135186, *1 (La. App.

1st Cir. Feb. 11, 2011).

-3-

The jury found Bickham guilty of both murder counts by a vote of 11-1.[6] As Bickham concedes, the State did <u>not</u> seek the death penalty.[7] Accordingly, on February 3, 2010, Bickham was sentenced to two concurrent sentences of life in prison at hard labor, to run consecutively to a separate sentence for a separate offense that he was then serving.[8]

On direct appeal, his sentence and conviction were affirmed by the Louisiana First Circuit Court of Appeal, and his related subsequent application for writs in the Louisiana Supreme Court were denied.[9]  Bickham then filed an application for post-conviction relief in the state trial court, which was denied, and his related subsequent applications for writs in both the state appellate and supreme courts were also denied.[10]

## II.   FEDERAL HABEAS PETITION

On December 30, 2013, the instant petition for federal habeas corpus relief was filed in this court. In his petition and supporting brief, Bickham asserts the following three claims: (1) He was entitled to the unanimous jury verdict provided under Louisiana

---

[6]<u>Id.</u>

[7]<u>Id.</u> at pp. 15, 17 (Brief in Support of Petition at pp. 5, 7).

[8]<u>Id.</u> at p. 13 (Brief in Supprt of Petition at p. 3).

[9]<u>Id.</u>; <u>State v. Bickham</u>, 71 So.3d 281 (La. S. Ct. 2011).

[10]<u>Id.</u> (Attachments at Record Doc. No. 1-1); <u>State v. Bickham</u>, 125 So.3d 446 (La. S. Ct. 2013).

state law for a defendant charged in a capital case, "even though the death penalty was no longer available at the time of trial."[11] (2) His conviction on two counts of first degree murder by a non-unanimous jury verdict of 11-1 was invalid under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.[12] (3) His appellate counsel provided ineffective assistance on direct appeal by failing to argue or assign as an error Bickham's non-unanimous jury verdict claim.[13]

III.   LEGAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[14] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Bickham's petition, which was filed in this court on December 30, 2013.

---

[11]Record Doc. No. 1 at pp. 15-17 (Brief in Support of Petition at pp. 5-7).

[12]Id. at pp. 17-34 (Brief in Support of Petition at pp. 7-24).

[13]Id. at pp. 34-36 (Brief in Support of Petition at pp. 24-26).

[14]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

-5-

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, however, since Bickham's petition clearly provides no substantive ground for relief, I find it unnecessary to address these threshold procedural issues, since the petition so plainly lacks merit.  See Rule 4, Rules Governing Section 2254 Cases; 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); 28 U.S.C. § 2254(d).

As to the merits of a habeas petition, 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

In this case, Bickham cannot bear his AEDPA burden as to any of his three asserted claims for the following reasons.

## IV.   CLAIM NO 1: NON-UNANIMOUS VERDICT VIOLATED STATE LAW

In his first claim, Bickham argues that he was entitled to the unanimous jury verdict guaranteed by Louisiana state law, specifically La. Const. Art. 1 § 17, for a defendant in a capital murder case, even though the State never sought and waived the death penalty, which Bickham never actually faced in his case. Every single citation to statutory or case law made by Bickham in support of this argument is to Louisiana state law.

Bickham's claim in this regard was rejected by the state courts evaluating this claim under their own state's laws in the post-conviction proceedings.[15] Even assuming, however, but certainly not deciding, that any such decisions were erroneous under Louisiana law, they are nevertheless binding on this court, sitting exclusively pursuant to its habeas corpus authority. This is so because a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); accord Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996)); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review questions of state law.  Estelle, 502 U.S. at 67-68; Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).

---

[15]Record Doc. No. 1-1 at pp. 43-53 (state court decisions in post-conviction proceedings).

Because Bickham's first claim in this court challenging the state courts' determination of the propriety of Bickham's conviction by non-unanimous 11-1 vote of the jury is governed by state law, review of that finding is not proper on habeas review. Bickham is not entitled to federal habeas corpus relief on his first claim.

V.      CLAIM NO. 2: FEDERAL CONSTITUTIONAL ARGUMENTS

Bickham's second claim is related to his first claim, except that it specifically makes the argument that his conviction of first degree murder by a non-unanimous jury violated his federal constitutional rights. The thrust of Bickham's claim in this regard appears to be a challenge to the constitutionality under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution of the Louisiana constitutional provision that permits conviction in felony cases based upon non-unanimous jury verdict where capital punishment will not be imposed, La. Const. Art. 1, § 17, and the Louisiana case law that upholds it.  This kind of challenge to the constitutionality of state law presents a pure question of law.  Ortiz v. Quarterman, 504 F.3d 492, 496 (5th Cir. 2007).  Thus, Bickham may obtain federal habeas corpus relief as to this kind of claim only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent.

The decades old and clearly established United States Supreme Court precedent applicable to this claim is directly contrary to Bickham's argument. In Apodaca v.

Oregon, 406 U.S. 404 (1972), and Johnson v. Louisiana, 406 U.S. 356 (1972), the United

States Supreme Court upheld the constitutionality of state laws – including Louisiana's

– that permitted criminal defendants to be convicted by less than unanimous votes. While

the Supreme Court itself has recently described the Apodaca/Johnson holding as "the

result of an unusual division among the Justices," it also made clear in the same breath

that Apodaca/Johnson remains the law of the land: "The [Supreme] Court has held that

although the Sixth Amendment right to trial by jury requires a unanimous verdict in

federal criminal trials, it does not require a unanimous verdict in state criminal trials."

McDonald v. City of Chicago, 130 S.Ct. 3020, 3035 n. 14 (2010) (emphasis added).  In

the habeas corpus context, the Fifth Circuit has recognized that a prisoner's constitutional

challenge to a state court conviction by a non-unanimous jury must be rejected under

Apodaca/Johnson: "We first note that we cannot find, as petitioner would like, that the

state court violated any federal right to a unanimous verdict in state court, because the

Supreme Court 'has not held that the Constitution imposes a jury unanimity

requirement.'" Hoover v. Johnson, 193 F.3d 366, 369 (5th Cir. 1999) (quoting

Richardson v. United States, 526 U.S. 813, 119 S.Ct. 1707, 1712 (1999) and citing

Johnson) (emphasis added).

Bickham effectively concedes in his own written submissions that the clearly

established precedent in Apodaca and Johnson is contrary to his position. His various

arguments concerning "'evolving standards of decency,'" "[r]ecent empirical studies," "dicta found" in other Supreme Court decisions, "practices of other states" and "changes in the American Bar Association's position regarding non-unanimous juries"[16] all seek change in the law and do not demonstrate contrary or unreasonable application of clearly established Supreme Court precedent in his case.

In  short, Bickham attempts to persuade this court that there are reasons why the Supreme Court's holdings in Apodaca/Johnson should be reconsidered, abandoned or changed.  On federal habeas corpus review, however, it is not the function of this court to apply its own judgment of what the law ought to be or might some day become. Instead, the standard is whether the state courts' decisions to uphold Bickham's murder conviction based on an 11-1 jury verdict was contrary to or involved an unreasonable application of clearly established United States Supreme Court precedent. Under Apodaca/Johnson and its progeny, including the decisions cited above,  the state courts' decisions in this regard were wholly consistent with Supreme Court precedent, and Bickham is not entitled to relief on this claim.

---

[16]Record Doc. No. 1 at pp.17-19, 23, 33 (Brief in Support of Petition at pp. 7-9, 13, 23).

VI.   CLAIM NO. 3: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Bickham's final claim is also related to his first two arguments.  He asserts that his appellate counsel was ineffective in that, although his trial counsel asserted an objection to the non-unanimous verdict, appellate counsel failed to identify this issue in the assignment of errors or argue it on direct appeal.

Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right.  Evitts v. Lucey, 469 U.S. 387, 394 (1985).  The general standard for judging performance of counsel established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), applies to claims of ineffective appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Goodwin v. Johnson, 132 F.3d 162, 170 (5th Cir. 1998).  In Strickland, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.  The Supreme Court held first that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).  Thus, under Strickland, Bickham must

show <u>both</u> that his counsel's performance was unreasonably deficient on appeal <u>and</u> that he was prejudiced.  <u>Smith</u>, 528 U.S. at 285.

More specifically, however, to prevail on a claim that <u>appellate</u> counsel was constitutionally ineffective, Bickham must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  <u>Briseno v. Cockrell</u>, 274 F.3d 204, 207 (5th Cir. 2001); <u>Smith v. Robbins</u>, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal.  <u>Green v. Johnson</u>, 160 F.3d 1029, 1043 (5th Cir. 1998) (<u>citing</u> <u>Evitts</u>, 469 U.S. at 394).  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue <u>every</u> nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983).  Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail.  <u>See</u> <u>Anderson v. Quarterman</u>, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit.  As such, failure to raise these issues did not prejudice Anderson."); <u>Penson v. Ohio</u>, 488 U.S. 75, 83-84 (1988)

(noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); Kossie v. Thaler, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).

Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue.  Smith v. Robbins, 528 U.S. 259, 288 (2000); Jones v. Barnes, 463 U.S. 745, 754 (1983).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009).  Accordingly, the question before this court is again whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

 For all of the reasons discussed above, a direct appeal assignment of error based on the 11-1 jury verdict that convicted Bickham of these murders would have been a loser under applicable federal constitutional law. It was in fact considered and determined by the state courts in the post-conviction proceedings to be a loser under Louisiana law.  The decision of appellate counsel not to assert this weak argument on

direct appeal must therefore be considered an exercise of sound professional judgment. Such an argument clearly would have lacked merit, and counsel's failure to assert it on direct appeal cannot be deemed either deficient performance or prejudicial, since there was no reasonable probability that Bickham would have prevailed on this issue on appeal.  Accordingly, Bickham is not entitled to federal habeas corpus relief on this claim.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Bickham's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[17]

New Orleans, Louisiana, this _____13th_____ day of January, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

_____

[17]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.